1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    FRANKIE REIS VIEIRA,                         No. 2:15-cv-1685 DB

12                  Plaintiff,

13          v.                                      ORDER

14    NANCY A. BERRYHILL, Acting
      Commissioner of Social Security,

15

16                  Defendant.

17

18          This social security action was submitted to the court without oral argument for ruling on

19    plaintiff's motion for summary judgment.[1]  Plaintiff's motion argues that the ALJ committed the

20    following three principal errors:  (1) the ALJ's treatment of the subjective testimony constituted

21    error; (2) the ALJ's treatment of the medical opinion evidence constituted error; and (3) the ALJ's

22    residual functional capacity determination and step five finding constituted error.

23          For the reasons explained below, plaintiff's motion is granted in part and denied in part,

24    the decision of the Commissioner of Social Security ("Commissioner") is reversed, and the matter

25    is remanded for further proceedings consistent with this order.

26    ////

27    ──────────────────────

28    [1]  Both parties have previously consented to Magistrate Judge jurisdiction in this action pursuant
      to 28 U.S.C. § 636(c).  (See ECF Nos. 6 & 9.)

1       PROCEDURAL BACKGROUND

2              On December 10, 2010, plaintiff filed applications for Disability Insurance Benefits

3   ("DIB") under Title II of the Social Security Act ("the Act") and for Supplemental Security

4   Income ("SSI") under Title XVI of the Act alleging disability beginning on January 14, 2008.

5   (Transcript ("Tr.") at 245, 428-43.)  Plaintiff's applications were denied initially, (id. at 279-83,

6   upon reconsideration, (id. at 285-90), and later by an Administrative Law Judge.  (Id. at 245-64.)

7              On February 28, 2014, the Appeal Council vacated the ALJ's decision and remanded the

8   matter to the ALJ for further proceedings.  (Id. at 271-74.)  On December 3, 2014, a hearing was

9   held before an ALJ.  (Id. at 48-94.)  Plaintiff was represented by an attorney and testified at the

10  administrative hearing.  (Id. at 48-49.)

11             In a decision issued on February 18, 2015, the ALJ found that plaintiff was not disabled.

12  (Id. at 39.)  The ALJ entered the following findings:

13              1.  The claimant meets the insured status requirements of the Social
                Security Act through December 31, 2012.
14

15              2.  The claimant has not engaged in substantial gainful activity
                since January 14, 2008, the alleged onset date (20 CFR 404.1571 *et*
16              *seq.*, and 416.971 *et seq.*).

17              3.  The claimant has the following severe impairments: major
                depression, alcohol abuse disorder in remission, cannabis abuse
18              disorder, bipolar disorder, borderline intellectual functioning,
                attention deficit hyperactivity disorder, cervical spine stenosis
19              status post surgery with residual degenerative disk disease at the C3
                and C4 levels, status post bilateral posterior cervical
20              foraminotomies at the C5-6 level, right shoulder arthritis, and
                bilateral carpal tunnel syndrome (20 CFR 404.1520(c) and
21              416.920(c)).

22              4.  The claimant does not have an impairment or combination of
                impairments that meets or medically equals the severity of one of
23              the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1
                (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925
24              and 416.926).

25              5.  After careful consideration of the entire record, the undersigned
                finds that the claimant has the residual functional capacity to
26              perform light work as defined in 20 CFR 404.1567(b) and
                416.967(b).  The claimant can lift, carry, push and or pull 20
27              pounds occasionally and 10 pounds frequently.  The claimant can
                stand and/or walk, with normal breaks, for 6 hours in an 8-hour
28              workday.  The claimant can sit, with normal breaks, for 6-hours in
                an 8-hour workday.  The claimant can never climb ladders, ropes,

2

or scaffolds.  The claimant can frequently kneel, crouch, bend, and can frequently climb ramps and stairs.  The claimant can occasionally crawl.  The claimant can frequently perform fingering, fine and gross manipulation with the bilateral upper extremities. The claimant can perform simple, repetitive, routine-type tasks. The claimant can frequently interact with supervisors, co-workers, and the public.  The claimant can maintain concentration, persistence, and pace for simple, repetitive, and routine tasks.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on November 27, 1968 and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from January 14, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Id. at 19-39.)

On May 29, 2015, the Appeals Council denied plaintiff's request for review of the ALJ's February 18, 2015 decision.  (Id. at 5-7.)  Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on August 7, 2015.  (ECF No. 1.)

LEGAL STANDARD

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

////

3

1    "[A] reviewing court must consider the entire record as a whole and may not affirm

2    simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin.,

3    466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir.

4    1989)).  If, however, "the record considered as a whole can reasonably support either affirming or

5    reversing the Commissioner's decision, we must affirm." McCartey v. Massanari,  298 F.3d

6    1072, 1075 (9th Cir. 2002).

7        A five-step evaluation process is used to determine whether a claimant is disabled. 20

8    C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  The five-step

9    process has been summarized as follows:

10            Step one:  Is the claimant engaging in substantial gainful activity?
11            If so, the claimant is found not disabled.  If not, proceed to step
              two.

12            Step two:  Does the claimant have a "severe" impairment?  If so,
13            proceed to step three.  If not, then a finding of not disabled is
              appropriate.

14            Step three:   Does the claimant's impairment or combination of
15            impairments meet or equal an impairment listed in 20 C.F.R., Pt.
              404, Subpt. P, App. 1?  If so, the claimant is automatically
16            determined disabled.  If not, proceed to step four.

              Step four:  Is the claimant capable of performing his past work?  If
17            so, the claimant is not disabled. If not, proceed to step five.

18            Step five:  Does the claimant have the residual functional capacity
19            to perform any other work?  If so, the claimant is not disabled.  If
              not, the claimant is disabled.

20    Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

21        The claimant bears the burden of proof in the first four steps of the sequential evaluation

22    process.  Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).  The Commissioner bears the burden

23    if the sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094,

24    1098 (9th Cir. 1999).

25    ////

26    ////

27    ////

28    ////

4

1    APPLICATION

2         In his pending motion plaintiff argues that the ALJ committed the following three

3    principal errors[2]:  (1) the ALJ's treatment of the subjective testimony constituted error; (2) the

4    ALJ's treatment of the medical opinion evidence constituted error; and (3) the ALJ's residual

5    functional capacity determination and step five finding constituted error.[3]  (Pl.'s MSJ (ECF No.

6    17) at 10-26.[4])

7    **I.    Subjective Testimony**

8         Plaintiff argues that the ALJ's treatment of plaintiff's testimony and the testimony of his

9    mother constituted error.  (Id. at 20-24.)

10        **A)    Plaintiff's Testimony**

11        The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's

12   credibility as follows:

13   > To determine whether a claimant's testimony regarding subjective
     > pain or symptoms is credible, an ALJ must engage in a two-step
14   > analysis.  First, the ALJ must determine whether the claimant has
     > presented objective medical evidence of an underlying impairment
15   > which could reasonably be expected to produce the pain or other
     > symptoms alleged.  The claimant, however, need not show that her
16   > impairment could reasonably be expected to cause the severity of
     > the symptom she has alleged; she need only show that it could
17   > reasonably have caused some degree of the symptom.  Thus, the
     > ALJ may not reject subjective symptom testimony . . . simply
18   > because there is no showing that the impairment can reasonably
     > produce the degree of symptom alleged.
19
     > Second, if the claimant meets this first test, and there is no evidence
20   > of malingering, the ALJ can reject the claimant's testimony about
     > the severity of her symptoms only by offering specific, clear and
21   > convincing reasons for doing so . . . .

22   Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks

23   omitted).  "The clear and convincing standard is the most demanding required in Social Security

24   cases."  Moore v. Commissioner of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002).  "At

25   ---
     [2]  As noted by defendant, it is difficult to discern all of the arguments found in plaintiff's motion
26   for summary judgment.  In this regard, the court has attempted to comprehend and analyze
     plaintiff's arguments to the extent possible.
27   [3]  The court has reordered plaintiff's arguments for purposes of clarity and efficiency.
     [4]  Page number citations such as this one are to the page number reflected on the court's CM/ECF
28   system and not to page numbers assigned by the parties.

1    the same time, the ALJ is not required to believe every allegation of disabling pain, or else

2    disability benefits would be available for the asking . . . ."  Molina v. Astrue, 674 F.3d 1104, 1112

3    (9th Cir. 2012).

4           "The ALJ must specifically identify what testimony is credible and what testimony

5    undermines the claimant's complaints."  Valentine v. Commissioner Social Sec. Admin., 574

6    F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595,

7    599 (9th Cir. 1999)).  In weighing a claimant's credibility, an ALJ may consider, among other

8    things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's]

9    testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work

10   record, and testimony from physicians and third parties concerning the nature, severity, and effect

11   of the symptoms of which [claimant] complains."  Thomas v. Barnhart, 278 F.3d 947, 958-59

12   (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792

13   (9th Cir. 1997)).  If the ALJ's credibility finding is supported by substantial evidence in the

14   record, the court "may not engage in second-guessing."  Id.

15          Here, the ALJ found that plaintiff's medically determinable impairments could reasonably

16   be expected to cause his alleged symptoms, but that plaintiff's statements concerning the

17   intensity, persistence and limiting effects of those symptoms were not "entirely credible for the

18   reasons explained in this decision."  (Tr. at 24.)  That is the entirety of the ALJ's specific analysis

19   of plaintiff's credibility.  In this regard, the ALJ's decision fails to provide a clear and convincing

20   reason for discrediting plaintiff's testimony.

21          Defendant's motion argues that the ALJ "appropriately found Plaintiff's testimony not

22   fully credible."  (Def.'s MSJ (ECF No. 18) at 14.)  In support of this argument, defendant cites to

23   the ALJ's decision pages "20-36."  (Id.)  Defendant then proceeds to assert that the ALJ did

24   provide specific reasons for rejecting plaintiff's testimony, referencing various parts of the ALJ's

25   decision in which the ALJ "noted" or "pointed to" evidence that defendant contends undermined

26   plaintiff's credibility.  (Id. at 14-18.)

27          Although the ALJ's decision did generally discuss the findings and evidence cited by

28   defendant, the ALJ did not specifically refer to any of these as a reason for discrediting plaintiff's

1  testimony.  This is perhaps most easily recognized from defendant's attempt to support her

2  argument with citations to the ALJ's decision.  Such citations are not found on a single page or

3  spanning two pages, but from disparate parts of the ALJ's decision.  And the ALJ's decision

4  made no effort to specifically link the discussion of these items of evidence to the rejection of

5  plaintiff's testimony.

6        It is well established that the court is required "to review the ALJ's decision based on the

7  reasoning and factual findings offered by the ALJ-not post hoc rationalizations that attempt to

8  intuit what the adjudicator may have been thinking."  Bray v. Comm'r of Soc. Sec. Admin., 554

9  F.3d 1219, 1225 (9th Cir. 2009).  Rather, the Commissioner's decision "must stand or fall with

10  the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."  Barbato v.

11  Comm'r of Soc. Sec. Admin., 923 F. Supp. 1273, 1276 n. 2 (C.D. Cal. 1996); see also Gonzalez

12  v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) ("[W]e are wary of speculating about the basis

13  of the ALJ's conclusion . . . .").

14        In this regard, it simply cannot be said that the ALJ offered specific, clear, and convincing

15  reasons for rejecting plaintiff's testimony.

16      **B)**        **Plaintiff's Mother's Testimony**

17        The testimony of lay witnesses, including family members and friends, reflecting their

18  own observations of how the claimant's impairments affect his activities must be considered and

19  discussed by the ALJ.  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006); Smolen

20  v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir.

21  1987).  Persons who see the claimant on a daily basis are competent to testify as to their

22  observations.  Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999);

23  Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993).  If the ALJ chooses to reject or discount

24  the testimony of a lay witness, he or she must give reasons germane to each particular witness in

25  doing so.  Regennitter, 166 F.3d at 1298; Dodrill, 12 F.3d at 919.

26        The mere fact that a lay witness is a relative of the claimant cannot be a ground for

27  rejecting the witness's testimony.  Regennitter, 166 F.3d at 1298; Smolen, 80 F.3d at 1289.

28  Moreover, "the reasons 'germane to each witness' must be specific."  Bruce v. Astrue, 557 F.3d

1    1113, 1115 (9th Cir. 2009) (quoting <u>Stout v. Comm'r</u>, 454 F.3d 1050, 1054 (9th Cir. 2006)).

2         Here, the ALJ's decisions discussed the testimony of plaintiff's mother, noting that

3    plaintiff's mother had "prepared several statements on behalf of her son." (Tr. at 23.)  Those

4    statements reflected that plaintiff was "easily sidetracked," "experienced many failed

5    relationships," was unable to handle money, was violent and had "memory difficulty."  (<u>Id.</u>)

6    Moreover, plaintiff struggled to perform simple tasks, required "a book of reminders," had

7    difficulty understanding directions, and could not "fill out, or read, paperwork."  (<u>Id.</u>)  Plaintiff's

8    mother also recounted that he suffered mood swings, and numbness and pain in his arms and

9    hands.  (<u>Id.</u>)  Plaintiff's violence resulted in physical fights with his brother, the destruction of

10   property, and threats "forcing [his mother] to obtain a restraining order against" him.  (<u>Id.</u>)

11        The ALJ ultimately found that plaintiff's mother's testimony was not credible because

12   "the evidence shows otherwise."  (<u>Id.</u> at 37.)  In this regard, the ALJ found that her statements

13   were "not consistent with the preponderance of the evidence in this case."  (<u>Id.</u>)  That is the extent

14   of the reasoning offered by the ALJ in support of the decision to reject the testimony of plaintiff's

15   mother.

16        "[A]n ALJ may discount lay testimony . . . that . . . conflicts with medical evidence."

17   <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2001).  From the ALJ's vague and conclusory

18   assertion, however, the court is unable to determine whether the ALJ's finding is accurate.  In this

19   regard, the ALJ's decision only informs the court that the testimony of plaintiff's mother was not

20   consistent with the preponderance of evidence.  The court is left in the dark as to what evidence

21   the ALJ found supported and what evidence contradicted the testimony of plaintiff's mother and

22   whether the ALJ's findings are accurate.

23        Accordingly, the court finds that plaintiff is entitled to summary judgment on his claim

24   that the ALJ's treatment of the subjective testimony constituted error.

25   **II.    Medical Opinion Evidence**

26        The weight to be given to medical opinions in Social Security disability cases depends in

27   part on whether the opinions are proffered by treating, examining, or nonexamining health

28   professionals.  <u>Lester</u>, 81 F.3d at 830; <u>Fair v. Bowen</u>, 885 F.2d 597, 604 (9th Cir. 1989).  "As a

general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . ."  Lester, 81 F.3d at 830.  This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual.  Smolen, 80 F.3d at 1285; Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

The uncontradicted opinion of a treating or examining physician may be rejected only for clear and convincing reasons, while the opinion of a treating or examining physician that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record.  Lester, 81 F.3d at 830-31.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  (Id. at 831.)  Finally, although a treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'"  Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray, 554 F.3d at 1228).

## A.    Dr. A. Genest

Plaintiff challenges the ALJ's treatment of the opinion of Dr. A. Genest.   (Pl.'s MSJ (ECF No. 17) at 13-16.)  In this regard, Dr. Genest testified at the December 3, 2014 administrative hearing.  (Tr. at 49.)  The ALJ's decision recounted Dr. Genest's opinion, noting first that "Dr. Genest opined that the [plaintiff's] major depression combined with ADHD and borderline intellectual functioning equaled listing 12.04,"[5] and that "it was not unreasonable for a person with such psychiatric issues to miss work more than three times per month."  (Id. at 33.)

The ALJ, however, assigned Dr. Genest's opinion "little weight," finding the opinion to be "not wholly consistent with the medical evidence of record or with his medical specialty[.]"

---

[5]  At step three of the sequential evaluation, the ALJ must determine whether a claimant's impairment or impairments meet or equal one of the specific impairments set forth in the Listings.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  The physical and mental conditions contained in the Listings are considered so severe that "they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or any other jobs."  Lester, 81 F.3d at 828.

(Id.)  In this regard, the ALJ began by noting that Dr. Genest was a "neurosurgeon whose specialty is not consistent with psychiatric disorders."  (Id.)  It is true that greater weight should be given to the "'opinion of a specialist about medical issues related to his or her area of specialty.'"  Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(5)).  However, that Dr. Genest is not a specialist is not cause to reject his opinion.[6]

The ALJ then stated that Dr. Genest's opinion was given little weight because "[t]here is no support in the record that the claimant's concussions caused borderline intellectual functioning."  (Tr. at 33.)  Dr. Genest testified, however, that his opinion was based, in part, on plaintiff's January 2, 2014 Learning Disability Evaluation, performed by Dr. Kenneth Brynjolfsson.  (Tr. at 64.)  That evaluation stated that plaintiff "reported a significant history of concussions," and that testing revealed that plaintiff was "functioning intellectually within the borderline range (4th percentile)."[7]  (Id. at 1385, 1388.)  In this regard, it cannot be said that there was no support in the record that plaintiff's concussions caused borderline intellectual functioning.

Nonetheless, the ALJ also rejected Dr. Genest's opinion that plaintiff equaled Listing 12.04 because "[t]he record shows that when the claimant does stop consuming alcohol, his symptoms stabilize."  (Tr. at 33.)  The ALJ noted that treatment notes from Dr. Imran Khan reflected that plaintiff's drug and alcohol use "exacerbates some symptoms."[8]  (Id.)  Dr. Khan's treatment notes support the ALJ's findings.  (Id. at 1324, 1327, 1340.)  "The Commissioner may reject the opinion of a non-examining physician by reference to specific evidence in the medical record."  Sousa v. Callahan, 143 F.3d 1240, 1244 (9th Cir. 1998).

Dr. Genest also opined that plaintiff's cervical spine stenosis with degenerative disk disease met the criteria for listing 1.04.  (Tr. at 33.)  The ALJ's decision, however, found that Dr. Genest's opinion was "not consistent with the medical evidence of record" and assigned the

---

[6]  It is somewhat puzzling that the ALJ would call Dr. Genest to testify as an expert, ask him to opine as to plaintiff's mental impairments, and then reject his opinion because he is not a specialist.

[7]  The ALJ assigned this opinion "significant weight."  (Tr. at 36.)

[8]  At the administrative hearing, Dr. Genest seemed to acknowledge that he "missed" the fact that plaintiff was again consuming alcohol during a relevant period of time.  (Tr. at 67.)

1    opinion "little weight."  (Id. at 33, 34.)

2          The ALJ noted that although plaintiff alleges disability beginning in 2008, he hurt his

3    shoulder playing softball in August of 2010, and again in December of 2010 by jumping off a

4    bridge.  (Id. at 34.)  Moreover, the ALJ noted that on September 19, 2013, plaintiff's treating

5    physician opined that plaintiff could return to "light duty" for six weeks and then "return to full

6    duty."  (Id. at 34, 1209.)  As noted above, "[t]he Commissioner may reject the opinion of a non-

7    examining physician by reference to specific evidence in the medical record."  Sousa, 143 F.3d at

8    1244.

9          **B.     Dr. Kimberly A Page**

10          Plaintiff argues that the ALJ's decision ignored the medical opinions provided by

11   plaintiff's treating surgeon, Dr. Kimberly Page.  (Pl.'s MSJ (ECF No. 17) at 17-18.)  As noted by

12   defendant, however, plaintiff is mistaken.  (Def.'s MSJ (ECF No. 18) at 12.)  In this regard, Dr.

13   Page's opinions can be found in her treatment notes.  And the ALJ's decision thoroughly

14   discussed Dr. Page's treatment notes.

15          With respect to Dr. Page, the ALJ's decision stated:

16              Dr. Mikulecky referred the claimant to neurosurgeon, Dr. Kimberly
                Page, who . . . recommended anterior cervical discectomy with
17              fusion (ACDF) at the most stenotic cervical levels at C3-4 and C4-
                5.  Dr. Page performed the surgery on February 1, 2012 without
18              incident.

19                                          ***

20              Follow up imaging revealed a broad-based disc osteophye complex
                at the C5-6 level, which Dr. Page opined, was causing moderate
21              bilateral neural foraminal narrowing.  She recommended posterior
                cervical decompression surgery.  The claimant underwent the
22              recommended surgery on July 25, 2013 . . . .  In a follow up
                appointment with Dr. Page in August 2013, the claimant reported
23              doing well with only some residual weakness.  Examination of the
                cervical spine revealed no tenderness to palpation, no pain, normal
24              cervical spine movements, and normal postures.  Examination of
                the thoracic and lumbar spine were unremarkable as well.  On
25              September 19, 2013, Dr. Page returned the claimant to work with
                restriction to a twenty-five pound weight restriction.
26
                                            ***
27
                Treatment notes however indicate that the claimant presented to
28              care with Dr. Page again in August 2014 reporting an 8-month

                                            11

1
2
3
4
5
6

history of cervical pain with radiation to the left arm and hand.  He helped move furniture in January 2014 and experienced neck pain with radiation down the left arm.  Dr. Page noted positive Tinel's sign of the left wrist.  She opined his symptoms were related to spasms in his neck and referred the claimant to physical therapy but ordered EMG studies as well.  The EMG study performed in September 2014 revealed moderate right carpal tunnel syndrome and no evidence of cervical radiculopathy or other entrapment or peripheral neuropathy.  She opined no surgery was currently indicated for the claimant's carpal tunnel syndrome.

7   (Id. at 30-31) (citations omitted).

8   The ALJ's decision also acknowledged that, after plaintiff experienced pain playing

9   basketball in the fall of 2012, Dr. Page opined that plaintiff's "broad-based disc osteophyte

10  complex at the C5-6 level . . . was causing moderate neural foraminal narrowing not cord

11  compression."  (Id. at 34.)  Dr. Page performed bilateral posterior cervical foraminotomies in July

12  2013.  (Id.)  In September of 2014 plaintiff underwent EMG studies which "were consistent with

13  bilateral carpal tunnel syndrome," however, Dr. Page "opined [it] did not require surgery."  (Id.)

14  (citations omitted).

15  In this regard, it cannot be said that the ALJ's decision ignored Dr. Page's opinions.

16  **C.      Other Source Opinions**

17  Plaintiff also makes a vague and conclusory assertion that the ALJ improperly discredited

18  "other" medical source testimony.  (Pl.'s MSJ (ECF No. 17) at 21.)  In addition to evidence from

19  acceptable medical sources, a plaintiff may offer opinions from "other sources" to establish the

20  severity of impairments.  See 20 C.F.R. §§ 404.1513(d), 416.913(d).  However, the ALJ may

21  afford less weight to other source opinions.  Nonetheless, the ALJ may only reject evidence from

22  an "other source," if the ALJ gives a germane reason for doing so.  See Molina v. Astrue, 674

23  F.3d 1104, 1111 (9th Cir. 2012); Bain v. Astrue, 319 Fed. Appx. 543, 546 (9th Cir. 2009); Petty

24  v. Colvin, 954 F.Supp.2d 914, 926 (D. Ariz. 2013) ("An ALJ is free to discount testimony from

25  other sources, but as the Commissioner concedes, he must give reasons germane to each witness

26  for doing so.").

27  Here, plaintiff argues that the ALJ improperly rejected the opinion of Ernesto Cervantes, a

28  Licensed Clinical Social Worker.  (Pl.'s MSJ (ECF No. 17) at 22.)  The ALJ's decision, however,

1   found that Cervantes' opinion was "not consistent with the record as a whole." (Tr. at 35.) In

2   this regard, although Cervantes opined that plaintiff suffered from panic attacks, "the record does

3   not show medical evidence in support of panic attacks." (Id.) Cervantes opinion also described

4   plaintiff as "not a team player," yet the record showed that plaintiff participated in a baseball

5   league. (Id. at 36.) Moreover, the record established that when claimant abstained from

6   substance use and complied with his treatment, his symptoms improved. (Id. at 35-36.)

7   Inconsistency with medical evidence is a germane reason to afford less weight to an "other

8   source" opinion. See Ball v. Colvin, 607 Fed. Appx. 709, 710 (9th Cir. 2015) (inconsistency with

9   "contemporaneous medical evidence" is a germane reason).

10      Plaintiff also argues that the ALJ erred with respect to the August 24, 2010 opinion of

11  Barbara Nolet, a Psychiatric Nurse Practitioner. (Pl.'s MSJ (ECF No. 17) at 21-22.) Nolet

12  opined, in part, that plaintiff was "severely disabled" and "unable to sustain employment or earn

13  even a GED" due to his symptoms. (Tr. at 645.) The ALJ's decision fails to address Nolet's

14  August 24, 2010 opinion.

15      The opinions from other sources are important and must be evaluated by the ALJ. See

16  Garrison v. Colvin, 759 F.3d 995, 1013-14 (9th Cir. 2014) (ALJ erred by failing to recognize

17  "other source that can provide evidence about the severity of a claimant's impairments and how it

18  affects the claimant's ability to work"); SSR 06-03p, 2006 WL 2329939, at *3 ("Opinions from

19  these medical sources, who are not technically deemed 'acceptable medical sources' under our

20  rules, are important and should be evaluated on key issues such as impairment severity and

21  functional effects, along with the other relevant evidence in the file.").

22      Accordingly, the court finds that plaintiff is entitled to summary judgment on his claim

23  that the ALJ's treatment of Nolet's other source opinion constituted error. Plaintiff is not entitled

24  to summary judgment with respect to the ALJ's treatment of the medical opinions of Dr. Genest

25  or Dr. Page.

26                                CONCLUSION

27      Plaintiff's motion for summary judgment is granted with respect to plaintiff's claims

28  concerning the ALJ's treatment of the subjective evidence and Nolet's other source opinion.

1   Plaintiff's motion is denied as to plaintiff's claims that the ALJ's treatment of the medical

2   opinions of Dr. Genest or Dr. Page constituted error.[9]

3          With error established, the court has the discretion to remand or reverse and award

4   benefits.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).  A case may be remanded

5   under the "credit-as-true" rule for an award of benefits where:

6          (1) the record has been fully developed and further administrative
           proceedings would serve no useful purpose; (2) the ALJ has failed
7          to provide legally sufficient reasons for rejecting evidence, whether
           claimant testimony or medical opinion; and (3) if the improperly
8          discredited evidence were credited as true, the ALJ would be
           required to find the claimant disabled on remand.
9

10  Garrison, 759 F.3d at 1020.  Even where all the conditions for the "credit-as-true" rule are met,

11  the court retains "flexibility to remand for further proceedings when the record as a whole creates

12  serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social

13  Security Act."  Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015)

14  ("Unless the district court concludes that further administrative proceedings would serve no

15  useful purpose, it may not remand with a direction to provide benefits."); Treichler v.

16  Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ

17  makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand

18  the case to the agency.").

19         Here, although the ALJ has erred, those errors are not such that the court can say that

20  "further administrative proceedings would serve no useful purpose."  Dominguez, 808 F.3d at

21  407; see also Treichler, 775 F.3d at 1103-04 ("In evaluating this issue, we consider whether the

22  record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been

23  resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal

24  rules.").

_____

25  [9] Plaintiff's third claim—that the ALJ's residual functional capacity determination and step five
26  finding constituted error— is premised on his arguments that the ALJ's treatment of the
    subjective testimony and the medical opinion evidence constituted error.  As explained above, the
27  court has found that the ALJ's treatment of the subjective testimony and some of the medical
    opinion evidence constituted error.  Those errors call into question that ALJ's residual functional
28  capacity determination and step five finding.  Accordingly, the court need not address this claim.

Accordingly, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for summary judgment (ECF No. 17) is granted in part and denied in part;

2.  Defendant's cross-motion for summary judgment (ECF No. 18) is granted in part and denied in part;

3.  The Commissioner's decision is reversed; and

4.  This matter is remanded for further proceedings consistent with this order.

Dated:  March 8, 2017

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.soc sec\vieira1685.ord